

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS

ATTORNEY GENERAL

Honorable Tom Moore
County Attorney
Caldwell County
Lockhart, Texas

Dear Sir:

Opinion No. 0-7456
Re: Under the facts submitted and under the provisions of Article 6081e, Section 3, R. C. S., can Caldwell County legally levy a tax of not exceeding five (5) cents on the $100 property valuation to create a fund to help defray the expenses of maintenance and operation of the park in question?

You have requested the opinion of this Department upon the following factual situation:

The Lockhart State Park is a park situated about 3 miles outside the city limits of Lockhart, Texas, and within Caldwell County of which Lockhart is the county seat. In 1933 certain local citizens became interested in securing a park for Lockhart and after several meetings a local committee and a representative of the State Parks Commission of the State of Texas entered into a parol understanding that if the lands for a park could be secured, an effort would be made to have the United States Government provide for a C J C Camp to improve the premises, and after the completion thereof the park lands would be turned over to the State Parks Board, who would take over the management and control thereof as a State park.

Pursuant to this agreement a bond election was called by the City of Lockhart to authorize the issuance of bonds in the amount of $7,500.00 under the authority of Section 2 and Section 2a of Article 6081e, V.A.C.S. After the bond issue was carried, the City of Lockhart commenced the purchase of various tracts of land, but the amount of the bond issue was insufficient to purchase all of the lands deemed necessary for the completed park.

A group of citizens came before the Commissioners Court of Caldwell County and requested that the County assist in the completion of the project. In August, 1935, the Commissioners Court in a regular meeting voted to donate "a sum not to exceed $1,300.00 for the purchase of land for the Lockhart State Park," said sum to be paid by the issuance of

3 per cent interest bearing warrants on the general fund of Caldwell County; and the County under the foregoing authority purohased land at a cost of $1,107.00 which was deeded for park purposes.

Photostatic copies of the various deeds to the State of Texas vesting the title to the lands composing the park under the provisions of Title 102, R. C. S. reveal that the park is composed of approximately 352 acres, the title to which is vested in the State of Texas for use as a public State park. There are 9 deeds of conveyance of various tracts and parcels forming the above total acreage. Of these deeds, 5 are from the original grantors to the State of Texas as grantee, reciting the consideration as having been paid by the City of Lockhart, and each of said conveyances contained the following language:

> "It is agreed by and between the State of Texas, acting herein by and through the State Parks Board, and the City of Lockhart, acting herein by and through its mayor and city commissioners, that the State of Texas will accept said land as a STATE PARK and will take possession and improve said land as a STATE PARK without cost or expense to the City of Lockhart, and will maintain such land as such a park without cost or expense to the City of Lockhart."

Each of said deeds of conveyance contained a reversion clause to the effect that if at any time the land is abandoned by the State of Texas as a State park and it ceases to maintain the same as such, the title will revert to the City of Lockhart, its successors and assigns in the absolute. The foregoing conveyances approximate 333 acres.

The remaining 3 conveyances are made by the original grantors to the State of Texas as grantee, reciting the consideration as having been paid by the County of Caldwell. Two of these conveyances contain the same clauses as to the expense of operation and maintenance as are found in the deeds of conveyance wherein the consideration was paid by the City of Lockhart, and also contain the same reversion clause in favor of the County of Caldwell. The third deed of conveyance, being for 4 1/3 acres, while not containing such a specific clause concerning operation and maintenance as is contained in the remaining 8 deeds of conveyance, nevertheless recites that the consideration was paid by Caldwell County for the purpose of said land being used in connection with and as part of a public State park with the understanding that the grantor at the request of the County of Caldwell and the State of Texas conveys said land to be used as a part of the park with the understanding and agreement "by and between the State of Texas" that the State acting through its Parks Board would "accept said land, improve same and maintain same as a part of said park" and containing a similiar reversion clause to Caldwell County.

The park, having been completed in 1940, was turned over to the State Parks Board and the State of Texas, but without any written agreement between the City of Lockhart, acting through its mayor and commissioners, and the State Parks Board for the control and operation of the park. The minutes of the City Commission reflect at the time of the calling of the election for the bonds that upon completion of the park same shall be turned over to the State Parks Board.

A written contract was entered into between a local committee of citizens of Lockhart to cooperate with the State Parks Board for the operation of a golf course situated in and which is a part of the park, which has expired according to its own terms but which has been continued by parol agreement between the same parties. It appears that the State Parks Board did not have sufficient appropriation to operate the park efficiently, and therefore the local committee above mentioned called upon the City of Lockhart and the Commissioners Court of Caldwell County to help defray the operating expenses. Caldwell County through its Commissioners Court then agreed to donate $25.00 a month to help defray the operating expenses of the park, which funds were paid from the general funds of the county to the Lockhart Golf Association, but which were not paid to the State Parks Board. The City of Lockhart acting through its city council also voting to donate $50.00 a month for the operation and maintenance of the park which sum was later increased to the sum of $100.00 a month, which sum was paid out of the city general fund but not to the State Parks Board.

Based on the foregoing factual situation, you have asked the following question:

"In view of these facts and Article 6081e, Section 3, Revised Civil Statutes, can Caldwell County legally levy a tax of not exceeding five (5) cents on the $100.00 property valuation to create a fund to help defray the expenses of maintenance and operation of this park?"

The acquisition of public parks by the State of Texas, and counties and cities thereof is governed by the provisions of Title 103, R.C.S. of Texas, 1925. Article 6078 provides for the acquisition, improvement and operation of parks by counties. Article 6080 provides for the acquisition, improvement and operation of parks by incorporated cities. In view of the factual situation above stated, neither of these article is applicable.

Chapter 148, Acts 1931, 42nd Legislature, p. 248 (Art. 6081e, V.A.C.S. 1925, as amended) provides for the condemnation or purchase by counties or incorporated cities of land for park or play grounds and for cooperation with the State Parks Board. Section 1 thereof is as follows:

"That any county or any incorporated city of this
State, either independently or in cooperation with each
other, or with the Texas State Parks Board, may acquire
by gift or purchase or by condemnation proceedings, lands
to be used for public parks and playgrounds, such lands to
be situated in any locality in this State and in any
sized tracts deemed suitable by the governing body of the
city or county acquiring same; provided, however, that lands to
be acquired by any such city or county for said purposes may
be, in the discretion of the governing body thereof, situated
within the State, either within or without the boundary limits
of such city, but within the boundary limits of said county
and within the limits of said county wherein said city lies
or is situated."

Section 2 thereof, as effective at the time of the acquisition
of this park, reads as follows:

"To pay for lands for park purposes, an incorporated
city and/or county may issue bonds, and may levy a tax not
exceeding Ten (10) Cents on the One Hundred Dollars ($100)
valuation of taxable property in such city and/or county to
pay the interest and provide a sinking fund to retire such
bonds, the issuance of such bonds, and the collection of taxes
in payment thereof to be in accordance with the provisions of
Chapter 1, Title 22, Revised Civil Statutes of Texas, 1925,
governing the issuance of bonds by cities, towns, and/or counties
in this State; this Section shall be construed to authorize
the levying of said tax not exceeding Ten (10) Cents on the
One Hundred Dollars ($100) valuation notwithstanding the
provisions of Article 6080 of the Revised Civil Statutes of
1925."

Section 3 of the act is as follows:

"All parks acquired by authority of this Act shall be
under the control and management of the city or county
acquiring same or by the city and county jointly, where they
have acted jointly in acquiring same, provided that the Com-
missioners' Court and the City Commission or City Council
may, by agreement with the State Parks Board, turn the land
over to the State Parks Board to be operated as a public
park, the expense of the improvement and operation of such
park to be paid by the county and/or city, according to the
agreement to be made between such municipalities and the
State Parks Board.

"All counties and incorporated cities are authorized
to levy a tax of not exceeding five (5) cents on the One
Hundred ($100.00) Dollars property valuation to create a

fund for the improvement and operation of such parks."
(Emphasis ours)

Section 1 of Article 6081e, supra, provides that "any county or any incorporated city of this State, either independently or in cooperation with each other, or with the Texas State Parks Board, may acquire by gift or purchase or by condemnation proceedings, lands to be used for public parks . . ." (Emphasis ours). The lands which the County of Caldwell acquired by issuance of the warrants on its general fund were acquired by purchase.

Section 2 of Article 6081e, supra, provides that to pay for lands for park purposes, a county may issue bonds under the provisions of Chapter 1, Title 22, R. C. S. 1925; and Article 701 contained in said chapter and title provides that the bonds of a county shall never be issued for any purpose unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters who are property taxpayers of such county.

While the City of Lockhart did comply with the provisions of Section 2 of Article 6081e, as to the issuance of bonds in compliance with Article 701, the proceeds of which were used to pay for part of the land included in the park, nevertheless, the County of Caldwell in no way attempted to comply with either Section 2 of Article 6081e or Article 701 in paying for the lands which it caused to be deeded to the State of Texas and which are included in the Lockhart State Park.

It is a well-settled principle of law that a county and its commissioners' court have no powers or duties except those which are clearly set forth and defined in the Constitution and pertinent statutes. Hill County vs. Hamilton, 273 S. W. 292; Edwards County vs. Jennings, 33 S. W. 585, and cases therein cited too numerous for repetition herein.

The above quoted statutes provide the manner and method by which counties may establish and finance county parks, either independently or in cooperation with the cities. It is a well-recognized principle of law that where the Legislature prescribes a definite, certain and fixed method of procedure for a City or County to follow in the execution of its governmental functions other methods are by implication of law excluded. Foster vs. City of Waco, 255 S. W. 1104 (Sup. Ct.).

In view of the fact that the County of Caldwell did not acquire the lands included within the Lockhart State Park in the manner provided by Article 6081e, V.A.C.S., as amended, the Commissioners' Court of Caldwell County is without authority to levy a tax of 5 cents on the $100 property valuation in the County of Caldwell to create a fund to help defray the expenses of maintenance and operation of this park.

There are other valid legal bases for this holding, but in view of the foregoing it is not necessary to discuss these legal questions at this time. This Department expressly refrains from passing upon the legality of the acquisition of the land by the County of Caldwell which was included in the Lockhart State Park.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ C. K. Richards
      C. K. Richards
      Assistant

CKR:ms-ds

APPROVED DEC 11, 1946

/s/ Grover Sellers

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY /s/ B.W.B.
CHAIRMAN